## GOODFELLOW v. KELSEY et al.

Plaintiff and defendants undertook to sell a tract of land for commissions, part of which was situated in one township and part in another, and they found purchasers for one of the townships, save for a portion of such township; and plaintiff and defendants, with consent of the owners sold the portion that the purchasers desired and took the remainder themselves, the commissions being applied on the purchase price to be paid by them. Thereafter one of the defendants found a purchaser for a portion of the other township; the defendants taking the portion not desired, as had been arranged with the first township. Plaintiff had continued endeavors to find a purchaser for the second township. **Held,** that, though plaintiff had not on request taken any of the lands in the second township, he was entitled to a partnership accounting for his proportion of the commissions, subject to his payment of his share of losses and expenses.

(Opinion filed, April 2, 1907.)

Appeal from Circuit Court, Brookings County. Hon. GEORGE H. MARQUIS, Judge.

Action by S. H. Goodfellow aginst J. H. Kelsey and another.

From a judgment in favor of defendants, and from an order denying a new trial, plaintiff appeals.    Reversed.

    *J. P. Alexander*, for appellant.    *Hall, Lawrence & Roddle*, for respondents.

CORSON, J.    This is an action by the plaintiff, who claimed to be a partner with the defendants, for an accounting on the sale of certain real property in the state of Minnesota.    Findings and judgment being in favor of the defendants, the plaintiff has appealed.

On the trial the court made certain findings of what he denominated "undisputed facts," which are as follows:

"(1) That certain lands, situated part in one township, called for the purpose of this action the 'East Township,' and part of them in another township, called for the purpose of the case the 'West Township,' were together and as one tract offered for sale by a St. Paul real estate broker, and that the defendant Kelsey, learning of the fact, called defendant Lloyd's, and afterwards the plaintiff's attention thereto, and afterwards the three men tried to find purchasers ready and willing to buy all of said lands.

"(2) That as a result of the efforts of the three men made singly and collectively, or both, purchasers were found ready, able, and willing to buy certain parts of said lands in the said east township, said parts amounting in the aggregate to practically four-sevenths of said lands in the east township, whereupon the three men obtained the consent of the owner of the said lands in said two townships, as a tract separate and apart from the said lands in the said west township, and having obtained such consent and finding it necessary, in order to effectuate such sale, to buy practically three-sevenths of the said lands in said east township, making, with the parts or portions for which they had found such purchasers, the entire tract of land in said east township offered for sale as aforesaid, did buy the same, and the sale of the said land in the said east township was effected by each of the said three parties to this action buying practically one-seventh thereof, and the deal was closed, and there remained unsold the lands in the said west township, and the commissions earned on the lands sold to the

said four customers and on the lands bought by Kelsey, Lloyd, and Goodfellow were credited by the said owner of the said lands upon the purchase price of the said lands bought by Kelsey, Lloyd, and Goodfellow, as in part payment thereof, each receiving in that way one-third of the commissions on the said lands in the east township, as though all of the said lands had been sold to customers found by said Kelsey, Lloyd, and Goodfellow.

"(3) After such sale of said lands in the east township, the defendant Kelsey found and produced the Hatches as prospective purchasers of part of the lands in said west township, but, owing to defects in or apparent clouds, real or imaginary, upon the title of said owner to said lands, or to some other reason not disclosed, the said Hatches hesitated, and it was for a long time uncertain whether they would buy any, and, if any, how much, of said lands in the west township; and while such uncertainty, continued the offer and refusal mentioned in said qestions 11 and 12, and the answers thereto were made. Finally the defects, if any, and the clouds, if any, were remedied and removed, and the Hatches became and were ready, able, and willing to buy the greater part, but not all, of said lands, and the deal as to said lands was closed by the said Hatches buying the greater part thereof and the defendants buying the balance, the defendants receiving a commission amounting in gross to $2,105.25 on the said lands sold to the Hatches, by a credit thereof on the purchase price of that part of the lands purchased by the defendants—Kelsey being credited with two-thirds of the commission and buying two-thirds of the land not sold to the Hatches, and Lloyd being credited with one-third of the land not sold to the Hatches. Said part of the lands so bought by the defendants as aforesaid was sold to them at the net price per acre at which all said lands were offered for sale per said broker; the commission being 35 cents per acre, and the said 35 cents per acre being deducted from the purchase price to the defendants of said lands so purchased by them, said 35 cents being deducted additional to the credit of the commission, $2,105.25 gross, on the land so sold to the Hatches as aforesaid.

"(4) That part of said tract in said west township so purchased by the defendant Kelsey, and that part of said tract so purchased

by the defendant Lloyd, still remain in the ownership and possession of the defendants, neither of them having, since buying the same, sold the same or any part thereof, and nothing as a commission or profit of the sale of said lands in the west township, or any part thereof, has ever been received or realized, except as hereinbefore appears, by the said defendants or either of them."

The court also called to its aid a jury, to which was submitted a number of interrogatories to be answered by it. These interrogatories and answers were adopted by the court, with one or two exceptions, the material ones reading as follows:

"(1) Was the original agreement of the parties a partnership agreement, whereby they were to act together and jointly and severally endeavor to obtain purchasers for the entire tract, known as the 'Walker Lands,' in Cass County, Minn., sharing the profits equally, each to receive a third thereof, in case through their joint efforts or the efforts of any one of them such sale was affected and a commission obtained, even though all actual purchasers should be found and produced by one or two of the parties and none by the other? A. Yes.

"(2) Was it an agreement whereby plaintiff and defendants agreed that each of them should obtain purchasers for enough of said tract to make, with what he himself should purchase, if it should become necessary for him to purchase any of such land for such purpose, one-third thereof, and should, in the event that each of the parties succeeded in so doing and a commission thereby accrue on said land actually sold to purchasers, receive one-third of such commission? A. No.

"(3) If the agreement among the parties was a partnership agreement, whereby they were to act together and jointly and severally endeavor to obtain purchasers for the entire tract, and in case of a sale thereof being effected should divide the commissions equally, each receiving one-third thereof, was that agreement terminated when the lands in the east township were sold, or did it continue after that sale with reference to the lands in the west township? A. It was continued.

"(4) If that agreement was a partnership agreement and if continued after the sale of the lands in the east township, was it

rescinded by any act or conduct of the parties, or any of them, before part of the lands in the west township was sold to the Hatches, and such sale was completely perfected, so that nothing further remained to be done; and, if so, by what act or conduct of the parties was it so rescinded? A. No."

The court also submitted additional interrogatories to the jury on its own motion, which are referred to in the court's findings and read as follows:

"(11) Did the defendants, after the Hatches were produced as prospective purchasers and while negotiations with the Hatches for the sale of part of the land in the west township were continuing, offer in good faith to permit the plaintiff to come in and share with them in the profits and losses and expenses and burdens incidental to such negotiations on such sale, if such sale should be finally perfected? A. Yes; they made to him that offer.

"(12) If your answer to the last question is in the affirmative, did the plaintiff refuse to avail himself of that offer? A. Yes.

"(13a) Was it absolutely necessary, to complete the sale of part of the lands in the west township to the Hatches, that the defendants, or the defendants and the plaintiff together, should purchase any part of the lands in the west township? A. Yes; it was.

"(13b) If so, did the plaintiff have notice of that fact? A. He did have notice."

From the findings the court drew the conclusion that the plaintiff was not entitled to recover in the action, and that the defendants were entitled to a dismissal of the same on its merits. As will be observed, the transaction relating to the lands in the "east township" was closed, each party receiving his commissions by having the same applied on the one-third interest of the land remaining unsold, and the conveyance to him of his one-third interest in said unsold lands; and hence there is no controversy in this case as to the commissions arising from the sale of the lands in the "east township"—the only question being as to the commission earned by the sale of the land in the "west township." The court, in its findings and conclusions of law, seems to have treated the sale of the lands in the "east township" and the sale of the lands in the "west township" as entirely separate and distinct transactions, and held that,

in view of the fact that the plaintiff was offered the opportunity to join in the transaction resulting in the sale of the lands in the "west township" to the Hatches, and failed to contribute his share of the expenses, and did not offer to take his share of the land unsold to the Hatches, he was precluded from recovering anything in this action.

The plaintiff contends that in taking this view the court was clearly in error, and that the partnership was entered into and carried on for the purpose of selling the land in both the "east" and "west" townships; that until the sales were concluded the plaintiff continued as such partner, and was entitled to share the profits, notwithstanding his failure to pay his share of the expenses and to take his proportioned share of the land remaining unsold to the Hatches; and that the taking of such remaining unsold land by the defendants inured to his benefit, subject, of course, to the right of the defendants to be reimbursed by the plaintiff for his share of the expenses, and reimbursed for any loss that might be sustained by reason of their taking the unsold land—in other words, that the plaintiff was entitled to his share in the net profits of the transaction, whatever those profits might be. Such seems to have been the view of the jury in answer to interrogatory No. 3 propounded to it and adopted by the court. We are inclined to take the view that the plaintiff is right in his contention. He having entered into the venture jointly with the other parties for the sale of both tracts, it was not competent for the defendants to exclude him without his consent from participating in the transaction resulting in the sale of the land in the "west township." It appears from the undisputed evidence that after the conclusion of the transaction resulting in the sale of the land in the "east township" the plaintiff continued his efforts to find purchasers for the land in the "west township," and made a trip to Iowa and expended considerable money for that purpose, and that he did not cease his efforts in that direction until informed by the defendant Kelsey that a sale had been virtually made to the Hatches of the larger portion of that tract. By the terms of the original agreement it will be noticed that there was no stipulation therein requiring the plaintiff to purchase any portion of either tract of land in order to

make the sales. So far as disclosed by the evidence and the findings, the taking of the one-third interest in the unsold land in the "east township" by the respective parties was entirely voluntary, and made with a view of closing up that transaction and earning their commissions.

So far as the record discloses the plaintiff was not required by the defendants to take any part of the unsold lands in the "west township," and, had he been so requested, there was nothing in the terms of his contract requiring him to take any portion of such land, and the fact that the defendants closed the deal by taking those lands in their own names does not, in our opinion, affect the plaintiff's right to his proportion of the commissions earned by such sales, subject, as before stated, to the payment of his share of the expenses and losses, if any. When the sale of the lands in the "west township" was effected by portions being taken by the Hatches and the remaining portions being taken by the defendants, the partnership was terminated, and the completion of the common enterprise had the effect, ipso facto, to terminate and dissolve the partnership. 17 Enc. Law (1st Ed.) 1109; Bently v. White, 3 B. Mon. 263, 38 Am. Dec. 186; Bohrer v. Drake, 33 Minn. 408, 23 N. W. 840. The contention, therefore, of the defendants, that the plaintiff, by reason of his failure to accept their proposition to participate in that transaction by taking a portion of the unsold lands, forfeited his right to any share of the profits arising from the sale of those lands, is untenable, and findings 11, 12, 13a, and 13b, adopted by the court, which seem to be somewhat in conflict with the former findings of the jury, adopted by the court as its findings, were clearly immaterial, and cannot be held as changing or modifying such former findings.

It is contended by the plaintiff that these latter findings were not supported by the evidence; but in the view we take of the case it will not be necessary to determine that question at this time. We are clearly of the opinion that the learned circuit court took an erroneous view of the rights of the plaintiff, in view of the material findings in the case, and that in concluding that the defendants were entitled to a judgment of dismissal of the complaint

on its merits it committed error, for which a new trial must be granted.

The judgment of the circuit court, and order denying a new trial, are reversed.