## CHAMBERS v. MITTNACHT et al.

A contract whereby plaintiff and defendant who had an option on certain mining property at a given price, were to sell the same to a corporation at a profit, and to receive money and stock in payment, did not violate Const. art. 17, § 8, providing that no corporation shall issue stock or bonds except for money, labor done, or money or property actually received, and that all fictitious increase of stock or indebtedness shall be void; or Rev. Civ. Code, § 1271, providing "that is not lawful which is (1) Contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals"—or section 1272, providing that all contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of the law, whether willful or negligent, are against the policy of the law.

Where plaintiff and defendant entered into a contract for the sale of mining property on which they held an option, agreeing to divide the profits, defendant could not, without plaintiff's consent, dissolve the partnership, and transact the business in his own name, and disregard plaintiff's right to share in the profits of the transaction.

A complaint alleged that plaintiff and defendant M. entered into a contract for the sale of mining property belonging to a third person, the commission and the profits of the deal to be shared between them; that M. sold the property to defendant corporation, and was about to receive a large amount of money, and also a large amount of the capital stock of the corporation, the exact amount of which was to the plaintiff unknown, and prayed that the corporation be declared to hold one-half of the stock for plaintiff. **Held,** that the allegations sufficed to authorize the proceedings against the corporation for the purpose of compelling it to hold the stock in trust for M., to hold or turn over the same to plaintiff, and to advise the corporation of the nature of the plaintiff's claim against it.

Where a reference was not the ordinary reference, under the statute, of a case where the referee finds the facts and states his conclusions of law and reports a judgment, but was simply a reference for the purpose of taking an accounting between the parties, the court

was not concluded by the findings of the referee, except so far as it adopted and approved them; the rules applicable to referees under the statute having no application to referees appointed by the court merely for the purpose of taking an accounting between the parties, to enable the court to prepare and enter a decree.

(Opinion filed, June 26, 1909.)

Appeal from Circuit Court, Custer County. Hon. LEVI Mc-GEE, Judge.

Action by W. H. Chambers against Henry Mittnacht and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

*Charles W. Brown* and *James A. George,* for appellants. *E. L. Grantham,* for respondent.

CORSON, J. This is an action by the plaintiff against the defendants, which was tried to the court without a jury, and a judgment and decree rendered in favor of the plaintiff, from which the defendants have appealed.

It is alleged in the complaint: "That the defendant the Pittsburg Mining Company is a corporation duly organized and existing under and by virtue of the laws of the state of South Dakota. That during the year 1902 the plaintiff and the defendant Henry Mittnacht entered into a contract at the county of Pennington in the state of South Dakota, wherein and whereby the plaintiff and said defendant entered into a contract for the sale and negotiation of a sale of the Lucky Boy and other claims lying in the vicinity of Tigerville, southerly from Redfern in Pennington county, S. D. That the plaintiff prospected the ground, and made a report for said purpose, and took the defendant Henry Mittnacht to the property, and said Mittnacht was to secure the parties to purchase the ground. That negotiations upon the property were made from time to time by the parties hereto, and finally the defendant Henry Mittnacht did perfect a deal for the sale and purchase of said property, organizing the defendant the Pittsburg Mining Company under the laws of the state of South Dakota for such purpose. That in the sale and negotiation of said property the said defendant Henry Mittnacht has received, or is about to receive, a large amount of money, the exact amount of it to the plaintiff unknown,

but upon information and belief plaintiff alleges that he is to receive, or has received, the sum of $10,000 as commissions upon said deal. And further plaintiff alleges that the defendant Henry Mittnacht is to receive, or has received, as commissions upon the sale and negotiations upon said property a large amount of the capital stock of the defendant company. The exact amount thereof is unknown, but upon information and belief the plaintiff alleges the amount thereof to be $100,000 thereof. That the plaintiff and the defendant Henry Mittnacht were to share and share alike the commissions and profits of said deal, each to bear his own expenses, and the one-half of the moneys aforesaid, and the one-half of the stock aforesaid, belongs to the plaintiff herein. That the defendant fails and refuses to deliver to the plaintiff any of the moneys or stock arising from the said deal, and refuses to recognize the rights of the plaintiff herein, although demand for a statement thereof has been made by the plaintiff. That by reason of the failure to keep and perform his said contract the plaintiff has been and will be necessarily put to a large expense, to wit, to the expense of $1,000 all to the plaintiff's damage in the sum of $1,000. Wherefore plaintiff prays for judgment against the defendants: First, for an accounting upon said contract, and the delivery to the plaintiff of the one-half of the stock received, or to be received by the defendant Mittnacht, and one-half of the moneys resulting to the said Mittnacht from the said deal; second, that the defendant corporation be declared to hold the interest in said corporation in trust for the plaintiff, and that the one-half of the stock coming to said Mittnacht be by said corporation issued to the plaintiff herein; third, for $1,000 damages, and the costs and disbursements of this action."

The defendant in his answer admits that his codefendant is a corporation, and that the defendant has failed and refused to deliver to the plaintiff any money or stocks arising from the deal, and also refuses to recognize any right in the plaintiff by reason of said transaction. For a second defense the defendant Mittnacht alleges that on or about the 7th day of August, 1903, this defendant was instrumental in causing a contract to be made and entered into between one Levi W. Kimball and the said Pittsburg

Mining Company for the sale of the properties described, and that the plaintiff had nothing to do with the said contract or transaction, or with the finding of a purchaser for said mining claims, and that the plaintiff was not in any manner instrumental in securing the said contract of property for this defendant, or his codefendant, the Pittsburg Mining Company; that, on the contrary, the plaintiff, at and prior to the month of August, 1903, during the time that negotiations were pending between the defendants and said Kimball for said mining company, was negotiating with said Kimball for the sale of said properties to other parties, and was attempting to prevent the sale of said mining property by said Kimball to said Pittsburg Mining Company. The answer of the Pitsburg Mining Company is substantially the same, and all the other allegations of the complaint not admitted by the defendants are denied by them. Upon a trial had before the court on the 14th day of April, 1904, the court found that the plaintiff and defendant Mittnacht, during the month of July, 1902, entered mutually into a contract with Levi W. Kimball, wherein and whereby the said Chambers and said Mittnacht were to undertake the negotiation and sale of certain mining properties of the said Kimball situated in Pennington county; that it was agreed between the parties to said contract that the said Kimball was to receive as purchase price of said property the sum of $25,000, and capital stock in the corporation, to be organized for the purpose of holding and operating said property, to the amount of $5,000, and it was further agreed that said Chambers and Mittnacht should sell said property at a price in advance of the purchase price thereof, thereby gaining for themselves a profit in the transaction, which should be divided equally between them, and to which arrangement for advance in price the said Kimball assented.

The court further finds: "That under the terms of sale to the parties purchasing said property, the defendant Mittnacht was to receive as part of the purchase price of said property, in addition to the contract price to Kimball, a certain amount of the capital stock of the Pittsburg Mining Company; that the same is now held by said corporation and not issued, but that when all arrangements and details of the company's organization shall have been

completed, the said stock, under an agreement between Henry Mitt-
nacht and the Pittsburg Mining Company, is to be issued to said
Henry Mittnacht; that the said Mittnacht is to receive the said
stock as aforesaid as profits on the sale of said property, and not
otherwise, and that by the terms of the contract the one-half there-
of belongs to the plaintiff herein; that the defendant, the Pitts-
burg Mining Company now holds of said stock the sum of 75,000
shares thereof, subject to the terms and conditions of the contract
between the Pittsburg Mining Company and said Henry Mittnacht;
that the value of the stock of the Pittsburg Mining Company is
not less than 25 cents per share; that the plaintiff demanded of
the defendant Henry Mittnacht an accounting, and the said de-
fendant refused to recognize the rights or claims of the plaintiff in
any manner whatsoever." From which findings the court con-
cludes that the plaintiff, Chambers, is entitled to one-half of the
profits arising from the sale of the properties mentioned; that
plaintiff is entitled to an accounting of all matters affecting the
profits and the conditions, agreements, and contracts of the said
Mittnacht with other persons, respecting his ownership of the
capital stock of the Pittsburg Mining Company contracted or
agreed to be delivered or issued to said corporation; that the said
accounting is necessary for the information of the court before the
entry of final judgment herein. Thereupon the court referred the
matter of an accounting to A. T. Feay, Esq., as sole referee. Pur-
suant to the order of the court the referee proceeded to take an
account of the transaction between the parties, finding that Mitt-
nacht, in the organization of said Pittsburg Mining Company. by
its agreement with him, was entitled to 140,000 shares of the com-
pany's stock as an advance or profit upon the sale of said mining
properties, to one-half of which, or 70,000 shares, the plaintiff was
entitled, and that the company held in trust for said Mittnacht
75,000 shares of the stock of said defendant, the Pittsburg Mining
Company. The report of the referee is quite voluminous; and, in
the view we take of the case it will not be necessary to insert it in
this opinion. Upon the coming in of the report of the referee the
same was approved and adopted by the court.

On the 10th day of January, 1905, the court proceeded to make

findings and judgment, embodying substantially the findings of the court in its former findings, and concludes therefrom: "That the plaintiff is the owner of 70,000 shares of the capital stock of the Pittsburg Mining Company, represented by the certificate of stock for 75,000 shares thereof issued in the name of Henry Mittnacht, and in the custody of the treasurer of the corporation. That the defendant, the Pittsburg Mining Company has become liable to the plaintiff for said 70,000 shares of its capital stock, or the value thereof, in case delivery is not made at the valuation of 25 cents per share. That the plaintiff is entitled to have and recover of and from the defendants, Henry Mittnacht and the Pittsburg Mining Company, 70,000 shares of the capital stock of the Pittsburg Mining Company, or the value thereof, $17,500, in case delivery cannot be had. [That plaintiff] is entitled to an order for the defendant, the Pittsburg Mining Company, to turn over to the plaintiff said 70,000 shares of stock, and, in case of a refusal, to do so within a reasonable time, to have process either by contempt or otherwise, or judgment against said defendant corporation for the value thereof, $17,500. The plaintiff is entitled to recover of and from the defendant Henry Mittnacht the sum of $1,000 damages, by reason of the wrongful acts of said defendant. The plaintiff is entitled to recover his costs and disbursements herein against the defendant Henry Mittnacht and the Pittsburg Mining Company." And a judgment was thereupon entered accordingly. Subsequently the claim of $1,000 damages was remitted by the plaintiff. It will thus be seen that the court, by its findings and conclusions of law, found that the plaintiff was entitled to the 70,000 shares of stock as against the defendant Mittnacht, and that it found that the defendant the Pittsburg Mining Company held that amount of stock in trust for Mittnacht, and that by its judgment the court decreed that the said mining company should turn over the said 70,000 shares of the 75,000 shares held by it to the plaintiff, and that, in case it failed or refused to turn over the said stock, then that the plaintiff was entitled to recover the value thereof, at the rate of 25 cents per share amounting to $17,500.

There was a large mass of evidence introduced, both orally and by way of depositions, but the only question necessarily liti-

gated was as to whether or not the plaintiff and Mittnacht were partners in the transaction resulting in the sale of the Kimball properties to the Pittsburg Mining Company, and as to the profit accruing to the parties by reason of such sale, and as to whether or not there was held by the mining company 75,000 shares in trust for Mittnacht; or, in other words, whether a profit had been made by the transfer of the property to the mining company to the amount of 140,000 shares as found by the court, to half of which, or 70,000 shares, the plaintiff was entitled. Upon a careful examination of the evidence taken by the court and referee, we are of the opinion that the referee and court were fully authorized to make the findings above quoted and fully set out in the abstract, and that the court was fully justified therefrom in making its conclusions of law.

It is contended by the appellant that the contract found by the court and referee, as entered into by the plaintiff and defendant Mittnacht, was contrary to section 8, art. 17, of the state Constitution, and to sections 1271 and 1272 of the Revised Civil Code, and to good morals, and is fraudulent, unlawful, and void. The section of the Constitution reads as follows: "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

Sections 1271 and 1272 read as follows:

"Sec. 1271. That is not lawful which is: (1) Contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals.

"Sec. 1272. All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

A large number of authorities are cited in support of the proposition of counsel; but, in the view we take of the case, the contract, as alleged and proven and found by the court, does not come within the inhibition of the Constitution, or in any manner violate

the provisions of the Civil Code. It will be noticed that the court by its third finding of fact finds that "the said Mittnacht received the said stock as aforesaid as profits on the sale of said property, and not otherwise." It was competent for the plaintiff and the defendant to enter into negotiations with the owner of the mining properties to purchase the same at a fixed sum agreed upon; and, in case they could make a sale of the properties for a larger sum, to receive the amount in addition as profits on the venture, and divide the same between themselves. It would seem from the findings of the court and the referee that after making the contract with Kimball, the owner of the mining properties, Mittnacht proceeded to make a sale of the same, and ultimately succeeded in disposing of the properties to parties who were willing to pay the amount stipulated to be paid to Kimball, and some $18,000 in addition thereto, for some other properties not owned by Kimball, and to issue to Mittnacht and Kimball, as originally agreed upon, each 120,000 shares of the stock, but that subsequently this contract was modified, which reduced the amount of stock to be issued to Mittnacht to 140,000 shares, which was to constitute the profit on the sale of the properties to the mining company. It cannot reasonably be claimed that the framers of the Constitution intended to prohibit parties from contracting to purchase properties, and thereafter reselling the same to a corporation, and receiving in the form of a profit upon the resale shares of stock in the corporation; or, in other words to prevent parties who enter into contracts for mining or other properties from reselling the same at an advanced price, and to receive a portion of the stock equivalent to such an advanced price over and above what was to be paid to the original owner.

It will be observed that the plaintiff and Mittnacht were not employed by Kimball as his agents to sell the properties at the best price obtainable for him, but that they had an option contract with him for the purchase of the property at a fixed sum. While it is true that neither the plaintiff nor Mittnacht had sufficient funds of his own to pay for the property contracted to be purchased of Kimball, they had an option upon the property which they had a perfect right to dispose of at an advance, and thereby

secure a profit to themselves on the transaction. And such clearly was the nature of the transaction as disclosed by this record. While it is true that the word "commission" is sometimes used in the evidence, and is used in the complaint, still the court as a court of equity was authorized, after hearing the evidence, to find the real transaction as between the parties, and, having found in effect that there was a resale of the property by Mittnacht, acting for himself and the plaintiff, to the mining company, by which he secured for himself and the plaintiff 140,000 shares of the stock as an advance upon the amount to be paid to Kimball for the properties, there was clearly no violation of the constitutional provision or the provisions of the Code. It is an everyday transaction that parties secure options on mining properties, agricultural lands, water rights, and other properties, and then succeed in finding a purchaser who is willing to take the properties, pay the amount stipulated in the option contract, and pay to the parties from whom they purchased, either in cash or part of the capital stock (in case the company is incorporated), the profits of the party who has originally secured the option, and it cannot be seriously contended that shares of stock so issued to the party holding the option as profit, or a cash payment to him as a profit or advance upon the price he was to pay, constitutes a violation of the constitutional provision. To give the provision of the Constitution the construction contended for by appellant would prevent parties who had options upon properties from selling the same to individuals or corporations, and receive an advance on the stipulated price specified in the option. In the case at bar it is disclosed by the evidence that the plaintiff was engaged in the mining brokerage business at Hill City in Pennington county, had made an examination of the properties of Kimball, and had concluded from such examination and assays made by him that they possessed great value as mining properties, and that they could be disposed of as an advance over and above the price placed upon them by Kimball, and that thereupon he entered into a verbal contract with Kimball for an option upon the properties at the price stated, and that, having accomplished this, he brought the matter to the attention of Mittnacht, who was also to some extent engaged in the sale of

mining properties, and it was then agreed that Mittnacht should interest parties in the East in the properties, and make a sale of them if possible, and that the plaintiff was to remain at Hill City to show the properties to such parties as might come to examine them, or experts who might be sent for that purpose, and to attend to the business of assisting in the sale of the property in Pennington county; that thereupon Mittnacht did present the properties to various parties in the East, some of whom visited the same, and under the direction of the plaintiff examined, and finally concluded to invest in these properties.

It is admitted by Mittnacht that he entered into the agreement as stated by the plaintiff, but that some time in February, 1903, he became discouraged, and gave up his efforts to dispose of the property in connection with the plaintiff. So far as the record discloses, the plaintiff never abandoned the enterprise, or consented that the same should be abandoned, and that up to the time of the completion of the sale by the purchase of the properties from Kimball, and the organization of the mining company, the plaintiff was constantly using efforts in connection with the defendant Mittnacht to carry out the original transaction, and that when he was informed that Mittnacht had succeeded in making a disposition of the property, and organized the mining company, he demanded of him his half of the profits of the venture, and was informed by Mittnacht that he was not connected with the deal, and had no interests in the profits. Clearly Mittnacht could not, without the consent of the plaintiff, dissolve the partnership, and transact the business in connection with the mining claims purchased of Kimball in his own name, and disregard the rights of the plaintiff to share in the profits of the transaction. Such was the view of this court in a similar partnership transaction, in which one of the partners sought to end the partnership on his own motion, and proceeded to transact the business of the partnership individually. Goodfellow v. Kelsey, 21 S. D. 241, 111 N. W. 555. This court in that case says: "He [the plaintiff], having entered into the venture jointly with the other parties for the sale of both tracts, it was not competent for the defendants to exclude him without his consent from participating in the transaction resulting in the sale of

the land in the 'west township.' It appears from the undisputed evidence that after the conclusion of the transaction resulting in the sale of the land in the 'east township' the plaintiff continued his efforts to find purchasers for the land in the 'west township,' and made a trip to Iowa and expended considerable money for that purpose, and that he did not cease his efforts in that direction until informed by the defendant Kelsey that a sale had been virtually made to the Hatches of the larger portion of that tract. * * * And the fact that the defendants closed the deal by taking those lands in their own names does not, in our opinion, affect the plaintiff's right to his proportion of the commissions earned by such sales, subject, as before stated, to the payment of his share of the expenses and losses, if any."

It is further contended by the appellants that the judgment against the mining company is not warranted or supported by the complaint. Clearly there is no merit in this contention, as the only claim made against the defendant company is that they be decreed to hold the 70,000 of the 75,000 shares of stock as trustee for the plaintiff, and that company is simply required to turn over to the plaintiff the said 70,000 shares of stock; and, when it shall do so, he has no further claim against the company. At the time the complaint was drawn all the facts subsequently disclosed by the evidence were not known to the plaintiff, and hence his allegations were necessarily somewhat indefinite, as the defendant Mittnacht had refused to communicate with him, as he should have done as a partner, the nature of the transaction between himself and the mining company. There is sufficient, however, in our opinion, in the complaint to warrant the court in its findings and judgment, as against the defendant company.

It is alleged in the complaint "that in the sale and negotiation of said property the said defendant Henry Mittnacht has received, or is about to receive, a large amount of money, the exact amount of it to the plaintiff unknown, but upon information and belief plaintiff alleges that he is to receive, or has received, the sum of $10,000 as commissions on said deal. And further plaintiff alleges that the defendant Henry Mittnacht is to receive, or has received, as commissions upon the sale and negotiations upon said

property a large amount of the capital stock of the defendant company. The exact amount thereof is unknown, but upon information and belief the plaintiff alleges the amount thereof to be $100,-000 thereof." The defendant company was therefore advised that they held money and stock of Mittnacht, and it was required to hold the interest in said corporation of the defendant Mittnacht in trust for the plaintiff, and that one-half of the stock coming to said Mittnacht should be by the corporation issued to the plaintiff herein. We think these allegations are sufficient to authorize the proceedings against the corporation, for the purpose of compelling it, if it held stock in trust for Mittnacht, to hold or turn over the same to the plaintiff, and that the defendant was fully advised by the complaint of the nature and character of the plaintiff's claim as against it. If, as found by the court, the defendant company hold the 75,000 shares of stock, 70,000 of which justly and rightly belong to the plaintiff, it has no reason to complain if it refuses to turn over the stock to the plaintiff, that it shall be required to pay him the value of the same.

It is further contended by the appellants that the court erred in modifying the report of the referee. Also that the report of the referee went beyond the referee's jurisdiction, and beyond the case made by the complaint, and embraced within the issue in the action. But these contentions are clearly untenable. An interlocutory decree was entered by the court, finding the facts in favor of the plaintiff, and stating its conclusions of law thereon, and the court, having found it necessary, for the purpose of a final decree, that an accounting should be had between the plaintiff and the defendant Mittnacht, and the relation sustained by Mittnacht to the mining company, and the mining company to him, referred the case to the referee to take an account. The duty of the referee was therefore to ascertain the state and nature of the accounts between defendant Mittnacht and the mining company, in order that the court might determine what decree should be made as against those parties. The reference, therefore, as contended for by the appellant was not the ordinary reference under the statute of a case where the referee finds the facts, and states his conclusions of law and reports a judgment, but was simply a reference for the pur-

pose of taking an accounting between the parties, and the court was not therefore concluded by the findings of the referee only so far as it adopted and approved of the same.

It it also contended that there is no evidence that the defendant Mittnacht ever received, or by any contract or understanding was to have or receive 20,000 shares of the 25,000 shares of stock issued to, and delivered to, Levi Kimball, or any part thereof, or any interest therein, but there was evidence as to this stock, submitted to both the referee and the court, and we cannot say that there was a preponderance of evidence against the finding. The contention, therefore, that there was no evidence upon this issue, or upon the issue as to Mittnacht receiving 120 shares of the stock, or is to receive it, is not sustained by the record. We shall not attempt to review the evidence in this opinion, as such a review would serve no useful purpose. We are satisfied, however, after a careful review of the evidence, that the findings of the court upon this question were sustained by the evidence.

It is further contended that the report of the referee went beyond its jurisdiction, and beyond the case made by the complaint, but. as before stated, the referee was simply acting in aid of the court in stating the account between the parties, in order to enable the court to make proper findings and judgment at the final trial of the case.

It is further contended that the court erred in modifying the report of the referee; but, as we have before stated, this reference was not made under the statute, but was made by the authority of the court as chancellor, and the court, as a court of chancery, was not absolutely bound by the findings of the referee. The rules applicable to referees under the statute have no application to referees appointed by the court merely for the purpose of taking an accounting between the parties to enable the court to enter and prepare a decree.

Finding no error in the record, the judgment of the circuit court and order denying a new trial are affirmed.

WHITING, J., taking no part in the decision.