[Civ. No. 8726. First Appellate District, Division Two.—February 10, 1933.]

JOHN ZENOS, Respondent, v. E. E. HARDEN, Appellant.

George M. Naus, Wyckoff, Gardner & Parker and Hubert Wyckoff, Jr., for Appellant.

Russell Scott, Paul L. Pioda, J. A. Bardin and J. T. Harrington for Respondent.

STURTEVANT, J.—The plaintiff brought a bill in equity to surcharge a stated account alleged to have been the basis on which a dissolution of a partnership had theretofore been made between the plaintiff and the defendant. The defendant answered and the action was tried before the court sitting without a jury. The court made findings in favor of the plaintiff and from the judgment entered thereon the defendant has appealed and has brought up typewritten transcripts.

The defendant claims that the findings are not sustained by the record. In this connection the defendant

vigorously asserts there was no evidence that the dissolution was predicated on any account between the partners, but that it was a contract of sale arrived at by a trade in the nature of give or take. We think there is an abundance of evidence in the record sustaining the findings. While the transaction culminated in a give or take trade, there was evidence it was based on the stating of accounts.

For some years prior to the dissolution above mentioned the plaintiff and the defendant had been partners engaged in producing and marketing truck crops. The plaintiff operated properties at Holtville in Imperial County and the defendant operated properties located at Salinas in Monterey County. Their operations were very extensive. At each place they farmed hundreds of acres. At each place they maintained an office and what appear to be full and accurate accounts were kept by trained accountants. By reason of the difference in climatic conditions any certain crop matured during certain months at Salinas but the same crop matured several months earlier at Holtville. In each county the partners rented lands and large portions of their crops were harvested therefrom. At the end of any certain season the assets were largely moneys in bank, paid-up rent, and crops planted to ·be grown and harvested the following year. As of August 31, 1928, which is the end of the season at Holtville, the plaintiff rendered to the defendant a full account of the affairs of the partnership in Imperial County. That account showed assets in the sum of $93,601.10. Later the defendant rendered to the plaintiff an account as of December 31, 1928, which is the end of the season at Salinas. That account showed the affairs of the partnership at Salinas and showed the assets in Monterey County as being in the sum of $167,849.86. Both accounts, among other things, purported to show the net profits for the year 1928. In the early part of January, 1929, the defendant went to Holtville and soon after arriving there, according to the testimony of the plaintiff, he delivered to the plaintiff two yellow sheets purporting to show the affairs of the partnership at Salinas down to December 31, 1928. There was evidence that the defendant was an experienced business man and familiar with bookkeeping methods and that he proceeded at once to make an examination of the accounts of the plant in Imperial

County. After he had examined those accounts he proposed the dissolution of the partnership. A quarrel at once ensued between the plaintiff and the defendant and for a day or two it appears they were not on speaking terms. Mr. Boyett, a public accountant who had acted for the partnership on other occasions, was called in by Mr. Harden, to act as mediator. He examined the accounts and made certain inquiries of the defendant as to the facts, and the statements made to him by the defendant were, at the defendant's request, repeated to the plaintiff. Mr. Boyett testified that he was interested in ascertaining the net profits of the plants for the preceding year to the end that he might, on that basis, form an estimate of the value of each plant. It is at once apparent that such a course was advisable. In raising truck crops the amount and quality of the yield is altogether problematical until the crop has been harvested. After the crop has matured the value per pound or per ton is altogether problematical until the crop has been sold. Until sales have been made it is quite difficult to do more than express a guess as to the value of a growing crop. It thus became quite material to ascertain the values as shown by the net profits during the last preceding years. Some of these facts were contained in the accounts and some were stated orally by the defendant. In discussing the terms of a dissolution facts taken from the accounts were referred to by the plaintiff, they were referred to by the defendant, and they were referred to by Mr. Boyett. There is evidence that in this manner the parties endeavored to arrive at terms. There is no evidence that anyone was sent out to appraise any tract of land or any crop. There is no evidence that the plaintiff went to Salinas or sent an agent there to make any examination. There is no evidence that while at Holtville Mr. Harden spent any time or had any agent spend any time in making any appraisals at Holtville. On the other hand, the record discloses evidence to the effect that the dissolution rested wholly on the facts shown by the accounts, supplemented by the oral statements of the defendant. As nearly as we can understand the record Mr. Boyett arrived at El Centro Saturday night. Sunday morning he and Mr. Zenos met at breakfast. They had a long talk. Later they separated and Mr. Boyett had a talk

with Mr. Harden. Still later Mr. Boyett called at the office at Holtville, where he and Mr. Zenos had a long talk in which Mr. Boyett repeated the statements made to him by Mr. Harden. Together they returned to El Centro. That evening, the date being February 2, 1929, all three met in Mr. Harden's room in the hotel. Prior to that meeting the uncontradicted evidence is that Mr. Harden had examined the account rendered by Mr. Zenos and he had also examined the books of the Holtville plant. Mr. Zenos had made at least a cursory examination of the account exhibited to him by Mr. Harden and he had heard from Mr. Boyett the additional facts stated by Mr. Harden as to the affairs of the plant at Salinas. Almost at once it was mentioned that $75,000 was about the difference between the values of the two plants. Taking the net profits for a guide, Mr. Boyett arrived at similar values. Mr. Zenos testified: ''I asked Harden, I said, 'Gene, you started this thing, just make a proposition. What do you want?' and he says, 'Well you know what the Salinas deal has got,' and I says, 'I do, and I do know what you gave me the figures'—I did know what he gave me and I had all the confidence in him and his word was as good as gold to me, and I says, 'All right, you got so much money there.' '' In another place he testified that Mr. Harden made the statement that he ''turned everything into cash, I didn't have any work done on the ranches, and no prepaid rent, and nothing on hand whatsoever, except the cash, and naturally as long as I knew Mr. Harden and have such confidence as I had in him in spite of his going back on a gentleman's agreement we had, I took his word upon it and I didn't hesitate, and I said, 'All right' . . . The exact figures was the 31st day of August, 1928 for the Imperial deal and the 31st day of December for the Salinas district. . . . It was for the reason that there is only two months in the year that you could—the only time possible that you can come nearest to any of the net profits would be August 31st for Imperial value and December 31st for Salinas. . . . Mr. Harden told him (Boyett) to take the figures from the 31st of August, 1928, for the Imperial Valley and take the 31st of December, 1928, for the Salinas district, and from these two months to arrive at the net profits or the capital each district had.'' Later in the

evening the minds of the parties met. Mr. Boyett being present was asked to reduce the agreement to writing. He did so and a copy thereof is as follows:

"El Centro, Calif.
2/2/29

"Agreement:

"This agreement made and entered into by and between John Zenos and E. E. Harden, doing business as Zenos and Harden, it is agreed that we are to dissolve the partnership heretofore in force upon the following basis: E. E. Harden is to take over the assets of the partnership at Salinas, which exceeds the assets of the partnership at Holtville, Calif. For the difference in the assets, E. E. Harden is to pay John Zenos $30,000.00 thirty thousand dollars, $10,000.00 on 2/4/29, and the balance $20,000.00 on or before 30 days from date. It is mutually agreed that John Zenos is to assume all liabilities at the Holtville plant, and E. E. Harden to assume the liabilities at the Salinas plant. Dissolution of partnership effective 2/4/29.

"(Signed) JOHN ZENOS
"(Signed) E. E. HARDEN

"Witness:
"R. O. BOYETT"

Thereafter, on February 4th, the plaintiff executed to the defendant a bill of sale transferring his interest in personal property located in Monterey County. On the same day the defendant executed a bill of sale transferring his interest in personal property located in Imperial County. Within thirty days after February 2, 1929, the defendant paid the plaintiff $30,000. Considering all this evidence, and giving force and effect to every part, it certainly cannot be said as a matter of law that the transaction constituted a trade of give or take and did not constitute a stated account, balance struck, and a payment over of the balance. They determined the values of the two plants, and the actual difference in values as distinguished from the book values as shown by the accounts before them. Having done so they then discussed which plant each one wanted to take as his share of the balance of the assets. On that subject their minds also met. The plaintiff agreed to take over the Holtville properties and the defendant agreed to take over the Salinas properties. If, as claimed, this was a give

or take trade, why did the parties discuss the accounts? Why did they call in a public accountant for help? Why not an experienced farmer? In short, we think the trial court was right in holding that the parties made a stated account and that the matter of give or take was but an incident of the transaction. In so holding we think the case is not governed by the doctrine of *Johnstone* v. *Morris,* 210 Cal. 580 [292 Pac. 970], but that it is governed by such cases as *Branger* v. *Chevalier,* 9 Cal. 353, *Adams* v. *Gerig,* 25 Cal. App. 638 [145 Pac. 106], and *First Nat. Bank* v. *Stansbury,* 62 Cal. App. 336 [217 Pac. 91]. In other words, whether the dissolution was the result of a compromise, a give or take trade, or upon an accounting had, or partly on each, is a question of fact, at least in part, for the determination of the trial court. In the instant case that question has been determined by the trial court and its determination cannot be said to be unsupported by the evidence.

In contending that the findings do not support the judgment, we understand the defendant to claim that the evidence does not show that in writing the parties struck a balance. This contention may not be sustained for several reasons. There was the written account regarding the properties in Imperial County and there is no question but that it showed a balance struck. There was also a written account as to the affairs in Monterey County. It also showed a balance struck. Whether orally or in writing a balance was struck between those two accounts is immaterial. An account stated may be oral. (*Converse* v. *Scott,* 137 Cal. 239 [70 Pac. 13].) When, as here, it appears that the exact balance as shown by the writings was $74,247.76 and the plaintiff's one-half interest $37,123.88, and the matter is settled by accepting $30,000, such fact is not conclusive to the effect that a balance was not struck. As shown above the accounts included several items as book value and the exact market value was extremely difficult of ascertainment. Instead of going into the courts the plaintiff waived a claim of $7,123.88—less than three per cent on the total assets involved. Certainly it may not be said as a matter of law that $30,000 was not the correct balance and that $37,123.88 was the correct balance. The

question was wholly problematical. The parties solved the problem for themselves.

We find no error in the record. The judgment is affirmed.

Spence, Acting P. J., and Goodell, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 11, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 11, 1933.