[Civ. No. 14139. Second Dist., Div. Two. Dec. 6, 1943.]

FORREST GRIFFETH, Appellant, v. OSCAR J. FEHSEL et al., Respondents.

Lewis & Taylor and Neville R. Lewis for Appellant.

Ernest C. Griffith for Respondents.

MOORE, P. J.—The question for decision is whether the evidence is sufficient to support the finding that a joint venture whereby the parties hereto had operated was terminated by mutual agreement of the parties. Judgment having been awarded defendants upon such finding, plaintiff appeals.

Prior to his association with Oscar J. Fehsel, hereinafter referred to as defendant or respondent, plaintiff was a retail distributor of a certain health food, hereinafter referred to as Concentra, which was manufactured by Jean Ferrell, Inc. of Chicago. Defendant had recently retired from the wholesale grain and flour business. In May 1938, plaintiff, having no funds with which to qualify as a wholesaler, proposed that he would undertake to induce the manufacturer to appoint defendant as its wholesale distributing agent for the Pacific Coast states. Following that proposal, respondent received the appointment and the parties entered into a joint venture arrangement whereby it was agreed between the two that for certain services to be performed for defendant by plaintiff, the latter should receive one-fourth of the profits earned by respondent's wholesale business. For such share plaintiff promised that he would devote his entire time and efforts continuously and diligently to soliciting and otherwise promoting the sales of Concentra and the Ferrell cosmetics by soliciting the retailers in all of the Pacific Coast states; that he would do everything necessary to promote such sales; that as a retailer he would place with respondent all of his

own orders in amounts of at least $2,000 net per month; and that the great increase in the volume of sales to be realized by virtue of his own efforts would more than compensate for the share paid him. No term for the continuance of the arrangement was mentioned.

The initial order for the product in excess of $500 was made by respondent during the negotiations of the parties. Defendant's contract with Jean Ferrell, Inc., to become wholesale distributor was executed on June 30, 1938. The ultimate requisite was the purchase of a shipment of Concentra at a cost of $5,000. While defendant was consummating his transaction with Jean Ferrell, plaintiff stealthily entered into some secret transactions with that lady on his own account. By one of these he collected $150 for obtaining Mr. Fehsel as a wholesaler for Jean Ferrell; by another he obtained a contract with the manufacturer by means of which he later asserted his power to take the wholesale business from respondent unless he were granted one-half of the profits.

Thereafter plaintiff delivered to defendant the names of five retail distributors of Concentra while Jean Ferrell herself furnished the names of a large number of retailers of the Ferrell products. Subsequently she supplied other prospects to whom respondent himself made sales by soliciting them, notwithstanding such work was to be done by plaintiff for his one-fourth share of defendant's profits. Although defendant continued as the wholesale dealer until December, 1940, no names of customers or prospects were furnished him by plaintiff during 1939 or 1940. However, until the termination of the arrangement respondent allowed plaintiff his one-fourth of defendant's profits, and with the exception of one shipment plaintiff made all of his wholesale purchases from defendant.

After respondent became established as the wholesale distributor for Concentra, plaintiff offered to travel into Washington and Oregon to make sales and promote the wholesale business. To make such journey defendant advanced him $315. He made no other trips, although respondent requested that he do so. Instead of working continuously at promoting the wholesale business, plaintiff on one occasion sojourned in Canada and eastern points for two and a half months. Contrary to his promise to make all of his purchases from defendant for his own retail distribution, plain-

tiff made one purchase directly from the manufacturer. Notwithstanding his failure to perform his agreements, in February, 1939, plaintiff demanded of defendant one-half of the latter's profits and declared that unless this request were complied with he would take the wholesale business away from respondent. Following plaintiff's return from his eastern travels, on a number of occasions after June 1, 1939, defendant offered to pay the commissions to which plaintiff was entitled. In a conference finally had, plaintiff was credited with all commissions to which he was entitled and still he was in debt to defendant. Defendant then stated to him that their joint venture was at an end; that plaintiff was not to work for defendant again; and plaintiff's reply was, "I am all through, from now on I am going to get my stuff from Chicago."

Details of the accounting and settlement effected between the parties was detailed in the testimony of respondent who in substance stated that after plaintiff had checked all the figures in defendant's books he accepted the sum of $876.63 as the amount of commissions unpaid to him for the period from January 1 to June 1, 1939, and admitted his debt to defendant for merchandise in the sum of $1,160.61. Subtracting his credit from his debit he owed a balance of $283.98. After his purchase of a final order of Concentra in the amount of $137.86 his total debt to defendant was $421.84, which had not been paid prior to filing this action. While some of the testimony of plaintiff was contradictory to that of respondent, the latter is ample support for the findings.

Plaintiff makes the contention that his indebtedness in the sum of $402 had been discharged by virtue of his credits for "overwrites." These were extra profits made on sales to certain retailers at a 45 per cent discount instead of 50 per cent from the retailers' list prices. This extra 5 per cent profit the venturers agreed to divide equally. But upon the testimony of both parties the court's finding against plaintiff on his contention was justified by the evidence that these "overwrites" were settled monthly during 1939 and 1940.

The agreement for a joint venture between the parties was effectively terminated by their own mutual agreement. (40 Am.Jur. p. 292, sec. 235.) There is no suspicion of fraud relative to the settlement. Having fixed no definite term for the duration of the joint venture, their oral agreement to

its termination and to an accounting left nothing for the court to adjudicate. (*Zenos* v. *Harden,* 129 Cal.App. 545 [19 P.2d 67].) ██ Parties to any sort of a business arrangement are their own best judges of the accounts between themselves. They understand their own plans and purposes as well as their settlements, and after they have reached an understanding to dissolve and have agreed upon an accounting, courts must not undo such mutual, extrajudicial determinations. (*Branger* v. *Chavelier,* 9 Cal. 353, 363; 20 Cal.Jur. 819, 820.)

██ Plaintiff contends that he is entitled to share in the profits on business of his customers after the dissolution of the venture. No contribution to the wholesale business was made by plaintiff after the dissolution. Without loss or expense to himself he purchased some merchandise from respondent as did any other retail dealer. But that did not revive the joint venture or impose any other obligation upon defendant to pay anything he earned after the termination of their former alliance. (*Peabody* v. *Pioneer Sand & Gravel Co.,* 172 Wash. 313, 317 [20 P.2d 15].) ██ The joint venture owned no assets. Therefore, upon its dissolution defendant was free to solicit business of any patrons of the past. (28 C.J. 735; *Pollock* v. *Ralston,* 5 Wn.2d 36 [104 P.2d 934] ; *Ruppe* v. *Utter,* 76 Cal.App. 19, 25 [243 P.715] ; *Middleton* v. *Newport,* 6 Cal.2d 57 [56 P.2d 508].) ██ Where a joint venture has no capital but is founded solely upon the services and personal qualifications of the parties, the venturer who continues his business following the dissolution is under no obligation to share his profits earned after the dissolution. (Note 80 A.L.R. 42, 70.) If the rule were otherwise, the retiring partner could stand by, watch the course of his erstwhile associate, and then assert a right to profits or deny liability according to the outcome. In the instant case the entire risk in the venture was the investment of respondent. A short time after defendant embarked upon the wholesale business an agency of the Federal government required the manufacturer to change the label from one of ''health food'' to one of a ''laxative.'' From that time the volume of the sales constantly diminished. Plaintiff not only did nothing to prevent the failure of defendant's investment, but from the day of the dissolution until defendant finally closed his wholesale business, plaintiff devoted all of his time to his own retail business.

He made no pretense of a claim against respondent during those 18 months, but while secretly nursing his vengeful purpose he procured his supplies of Concentra from defendant. Having by the mutual dissolution been freed of all liability for the obligations of the wholesale venture, plaintiff may not share in the profits subsequently earned by defendant's industry and capital. (*Miller* v. *Butterfield,* 79 Cal. 62, 65 [21 P. 543].) ▆ After the parties had agreed to a termination of the venture no obligation of either remained, except to liquidate and divide the assets. (*Maryland Casualty Co.* v. *Little,* 102 Cal.App. 205, 210, 211 [282 P. 968].)

Appellant cites a number of authorities in support of his contention that he should share in the profits earned after the joint venture had been terminated: *Champagne* v. *Passons,* 95 Cal.App. 15 [272 P. 353]; *Freeman* v. *Donohoe,* 65 Cal.App. 65 [223 P. 431]; *Ruppe* v. *Utter,* 76 Cal.App. 19 [243 P. 715]; *Falkner* v. *Hendy,* 80 Cal. 636 [22 P. 401]; 20 Cal.Jur. 817; 33 C.J. 851; 80 A.L.R. 21; *Lind* v. *Webber,* 36 Nev. 623 [134 P. 461, 135 P. 139, 141 P. 458]; *Karrick* v. *Hannaman,* 168 U.S. 328 [18 S. Ct. 135, 42 L.Ed. 484]; *Major* v. *Todd,* 84 Mich. 85 [47 N.W. 841]; *Chambers* v. *Mittnacht,* 23 S.D. 449 [122 N.W. 434]. Each of these cases is readily distinguishable. In some of them there was an express or implied provision for the duration of the partnership for a definite term; in some a dissolution had been agreed upon without a final accounting; in others, valuable assets of the partnership continued to earn in the hands of the possessor after dissolution. In the Ruppe case, after the partnership was terminated the defendant continued to use the assets of the firm including its good will.

▆ In the instant action there was not only a dissolution proved and an accounting agreed upon, but the evidence shows that defendant might with right and propriety have closed the venture because of plaintiff's failure to fulfill the obligations he had assumed for his one-fourth of the earnings. (*Maryland Casualty Co.* v. *Little, supra.*) He did not produce orders approximating $2,000 monthly; had absented himself for two and a half months of the year of the venture; had not traveled into Oregon or Washington to promote the sales to retailers; had secretly accepted a fee from the manufacturer for getting respondent to accept the appointment as wholesale distributor. He merely demanded a larger share of defen-

dant's earnings with a threat of disaster in event of a denial. He did not come with clean hands to ask the aid of equity. But had he faithfully performed all of his obligations under the venture he would still have been denied a judgment because upon substantial evidence it was found that the joint venture had been mutually dissolved.

Two rulings of the court are assigned as prejudicial error, viz: (1) that the court rejected plaintiff's offers of evidence on the accounts; (2) that the court improperly denied the motion for a new trial. At the beginning of the trial upon the stipulations of the parties it was ordered that the "evidence relating to the amount of plaintiff's claim for damages or an accounting should abide the conclusion of the evidence of both sides upon all other issues . . . and only be inquired into and determined in the event the court should thereupon hold that plaintiff was entitled to recover . . ." Pursuant to section 597, Code of Civil Procedure, such stipulation and order are in common practice in the trial courts and have been approved. (*Booth* v. *Bond,* 56 Cal.App. 2d 153 [132 P.2d 520].) No sufficient showing of diligence was made in support of the motion for a new trial. Plaintiff had cherished his purpose to sue for eighteen months, after which he filed his action on January 11, 1941. The trial commenced on July 10, 1942. The judgment was not signed until August 20, 1942. Plaintiff testified to the payment of a sum to defendant. His inability to contact his corroborating witnesses on that question should have been the basis of a motion for continuance at the commencement of the trial or for a reopening of the case prior to rendition of judgment. Moreover, a new trial is properly denied unless the newly discovered evidence is such as to render a different result probable. (*Bradbury Estate Co.* v. *Carroll,* 98 Cal.App. 145, 154 [276 P. 394].)

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.