[S. F. No. 2234.    Department One.—June 12, 1902.]

## YUKON RIVER STEAMBOAT COMPANY, Respondent, v. RICHARD GRATTO et al., Appellants.

CONSTRUCTION OF BARGE—EXECUTORY CONTRACT—INSTALLMENTS UNPAID —TITLE NOT VESTED.—Under an executory contract by boat-builders to construct a barge, to be paid for in installments, the last of which was to be paid when the barge was completed and launched, where a large amount remained due and unpaid when the barge was completed, and possession thereof was not delivered, no title of any nature was vested in the purchaser.

ID.—TROVER—CONVERSION.—The parties for whom the barge was to be constructed, never having become the owners or entitled to possession thereof, cannot maintain an action of trover for conversion of the barge by sale thereof by the builders at public auction, after notice to the purchasers and refusal by them to pay the balance due under the contract.

ID.—MEASURE OF DAMAGES IN TROVER.—The measure of damages in trover for the conversion of the barge cannot be based upon the cost of the construction under the contract, and can only be based upon the value thereof at the time and place of conversion; and the price at which it was disposed of at public auction is evidence of the market value.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

A. Morgenthal, for Appellants.

T. C. Judkins, William M. Cannon, and Cannon & Freeman, for Respondent.

VAN DYKE, J.—This action is in the nature of trover for the conversion of a barge. Plaintiff had judgment, and the defendants appeal from the judgment and from an order denying their motion for a new trial. The plaintiff is a corporation, and the defendants are copartners, engaged in the boat-building business in the city and county of San Francisco. The barge in question was built by the defendants under an agreement entered into between themselves, as

parties of the first part, and said company, as party of the
second part, on the eighteenth day of April, 1898, to the
effect ''That the said Gratto and Reimers, parties of the first
part, for the consideration hereinafter named, agree to con-
struct and build for the said party of the second part, a barge,
according to the specifications hereto annexed, of the follow-
ing dimensions, to wit: Length, one hundred and fifty feet;
breadth, thirty-four feet; depth on side, molded, six feet and
two inches. They also agree to furnish all materials required
in completing said hull and pilot-house, do all the black-
smith-work and carpenter-work and painting, and launch
said barge in the waters of the bay of San Francisco, on or
before the twenty-fifth day of May, 1898. In consideration
whereof, the said party of the second part promises and
agrees to pay to the said Gratto & Reimers, of the first part,
the sum of six thousand two hundred and fifty dollars
($6,250.00), United States gold coin, in the following man-
ner: Fifteen hundred dollars ($1,500) on the day of sign-
ing this contract; three thousand seven hundred and fifty
dollars ($3,750) as the work progresses, and the balance of
one thousand dollars ($1,000) at the time said barge is com-
pleted and launched.'' The defendants at once proceeded
to build the barge according to the agreement. As the pres-
ident of the plaintiff company testifies, ''they went right
ahead with the construction of the barge according to their
contract, and fulfilled their contract in first-class shape.''
The barge was completed about the 25th of May, ready for
launching, but at that time there was a balance due and
unpaid of $2,850, and the officers of the plaintiff company
were unable to raise the money from their stockholders, as
the president of the company at the trial testifies: ''We
have not paid any more money under this contract than I
have testified to, and we never had possession of the barge.
We still owe this money on the barge.'' As she was liable
to injury from shrinkage in the weather after completion,
it was concluded among all parties to have her launched,
which was done on June 10th; on which occasion, as testi-
fied to by the secretary of the plaintiff company, defendants
said to the president of the company, ''There she is; when
you pay for her you can have her.'' And further on he
testifies, ''We have never tendered to them the balance of this

money." The barge was constructed for a special purpose, to be used on the Yukon River, in Alaska, where it is customary to carry the freight in the hold, and for that reason the deck was built lighter than on barges that are used in and about the bay of San Francisco, where it appears to be customary to carry the load on deck instead of in the hold. The plaintiff company was unable or unwilling to pay the balance due, and the barge was left upon the hands of the builders, and the season for sending her to Alaska being over, on the 23d of August, 1898, the defendants advertised and sold her at public auction.

The finding of the trial court, "That at all the times mentioned in the plaintiff's complaint, and at the time of the commencement of said action, plaintiff was the owner of and entitled to the possession of said barge," is not sustained by the evidence, but, on the contrary, it is squarely against it. Under the contract it was not to become the owner of the barge until paid for; and it is clearly shown and admitted that the defendants fulfilled their part of the contract to the letter, but that the plaintiff corporation never complied with the terms of its contract, and, therefore, did not become the owner of the barge, and was never in possession or entitled to the possession. In *Clarkson* v. *Stevens,* 106 U. S. 505, this question is thoroughly considered, and many cases referred to, both in England and this country. That was a case for the construction of what was called "Stevens Battery," for the government, upon payments by installments, and the payments not having been all made or possession taken, the court held that "the United States had no title to the Stevens Battery, but that the property in it had continued in Robert L. Stevens until his death, and passed by his will to Edwin A. Stevens, as residuary legatee." In *Cardinell* v. *Bennett,* 52 Cal. 476, it was held one who enters into a contract with another, whereby it is agreed that he shall own certain personal property on the performance of certain conditions by him, has no complete ownership, either general or special, in the property by virtue of the contract. It is held to be a contract for purchase, and not a purchase. In *Andrews* v. *Durant,* 11 N. Y. 35,[1] it is said: "The general rule is, that if a person contracts with another for a chattel

[1] 62 Am. Dec. 55, and note.

which is not in existence at the time of the contract, though he pay him the whole value in advance, and the other proceeds to execute the order, the buyer acquires no property in the chattel till it is finished and delivered to him.'' Here it has been seen that only a little over one half of the agreed price was ever paid, and that the plaintiff company defaulted in its contract, and was unable or, under the circumstances, unwilling to complete it. In Benjamin on Sales (7th ed. p. 298) it is said: ''In America the prevailing rule is, that in the sale or manufacture of things to be paid for by installments, or as the work of manufacture progresses, the title does not pass as fast as the installments are paid, but only when they are all fully paid, unless the facts and circumstances show that a different intention existed.''

The finding of the court that at all such times said barge was, and now is, of the value of $6,250 is not sustained by the evidence, but against it. As already stated, the barge was constructed for a special purpose, to be used on the Yukon River, and not suitable for the trade here. At the time she was built there was a rush in building vessels to be used there that season, and her construction hurried in consequence, which caused a considerable waste in building material. The barge was sold over two months after being launched, and after the season for taking her to the Yukon had passed. She was sold at public auction, after notice, for $2,975, and the purchaser offered to forfeit his deposit of one hundred dollars and leave the barge on the hands of the builders, and the builders also offered the barge at that time to the plaintiff company upon payment of the balance due under the contract, which offer was refused. The finding of the court in reference to the value must have been based upon the cost of the construction under the contract, which is not the rule. On the contrary, the rule is, the value at the time and place of conversion is the measure of damages. (Civ. Code, sec. 3336; *Hamer* v. *Hathaway,* 33 Cal. 117), and ''the price at which the goods have been disposed of at public auction is evidence of the market value.'' (26 Am. & Eng. Ency. of Law, p. 826.)

Notwithstanding the court found that the plaintiff was the owner and entitled to the possession of the barge, it also found that at the time of the alleged conversion of the property

"the plaintiff was indebted to the defendants in the sum of $2,850, as a balance due defendants for work, labor, and services done and performed and materials furnished in the construction of said barge for plaintiff, no part of which has been paid by the plaintiff." The findings are clearly conflicting and inconsistent with each other. Under the contract as shown, the plaintiff company did not become the owner, nor was it entitled to possession, until full payment was made, and here it is found that nearly one half of the contract price remained unpaid up to the time of the trial.

Under the facts and circumstances of this case trover will not lie. The plaintiff in trover must have possession or right to the immediate possession. In *Triscony* v. *Orr*, 49 Cal. 617, this court says: "It is well settled that a person having neither the possession nor the right to possession of personal chattels cannot maintain trespass or trover for an injury done to the property." (*Cardinell* v. *Bennett*, 52 Cal. 476; *Clarkson* v. *Stevens*, 106 U. S. 505.) And in Benjamin on Sales (p. 825) it is further said: "In the case of resale a buyer in default cannot maintain trover against the vendor, being deprived by his default of that right of possession without which trover will not lie."

Judgment and order appealed from reversed.

Harrison, J., and Garoutte, J., concurred.

Hearing in Bank denied.