[No. C021401. Third Dist. Oct. 16, 1996.]

JOSEPH A. FISCHER et al., Plaintiffs and Respondents, v.
CRAIG MACHADO et al., Defendants and Appellants.

**COUNSEL**

Martin B. Brifman for Defendants and Appellants.

Luke & Barron and Richard B. Barron for Plaintiffs and Respondents.

## OPINION

**RAYE, J.**—Can a commission merchant convert the proceeds of the sale of farm products he sells as an agent for the farmer? The trial court held that neither state nor federal law precludes a common law action in conversion against a commission merchant who commingled such proceeds with its general accounts and then went out of business. Following a trial without a jury, the court entered judgment for the farmers for conversion. We affirm.

### FACTS

Plaintiffs Joseph A. and Joan Fischer own a farm and a small fruit packing company, Cottonwood Packing Co. Defendants Craig and Marcia Machado owned North State Distributors, Inc., a company which acted as a sales agent for farmers. Craig Machado was the president and chief financial officer and Marcia was the corporation's vice-president and secretary. In April 1992 Fischer and Machado executed a written contract providing that North State would act as Cottonwood's sales agent for the 1992 crop for a 6 percent commission.

North State received a total of $108,174.78 for the sales of Cottonwood fruit and placed these proceeds into its operating account. The funds were used to pay payroll, to pay an overdraft of the corporate checking account, to reimburse Machado for a loan he had paid to North State, and to pay a bank loan and an equipment lease the Machados had personally guaranteed. The Machados knew of, and approved, the procedure by which funds received from the sale of the consigned farm products were put into the corporate account and utilized to pay operating expenses and to repay loans.

In August 1993 North State filed for bankruptcy. The farmers were never paid.

The Fischers filed a complaint against the Machados alleging they were the alter ego of the corporation and were personally liable for North State's debts and for conversion. Following a court trial, the court found the Machados liable for conversion. Having observed that section 56623 of the Food and Agricultural Code prohibits a commission merchant from using the proceeds of the sale of consigned products in a manner which jeopardizes prompt payment, the court ruled: "North State's use of funds received in connection with the sale of plaintiffs' consigned farm products for its own and the defendant's [*sic*] personal benefit impairing North State's faithful and prompt payment to plaintiffs constitutes conversion." The Machados appeal.

DISCUSSION

I.

The dispositive legal principle was written by Justice Traynor in 1941. ■ "A broker or agent is ordinarily liable for converting the funds of his principal when he refuses to account for them upon proper demand. [Citations.] While it is true that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved [citation], it is not necessary that each coin or bill be earmarked. When an agent is required to turn over to his principal a definite sum received by him on his principal's account, the remedy of conversion is proper." (*Haigler* v. *Donnelly* (1941) 18 Cal.2d 674, 681 [117 P.2d 331].)

North State was designated as a "sales agent" or "commission merchant" in the written agreement between North State and Cottonwood. ■ "Agency is both a consensual and a fiduciary relation. An agent is not merely a promiser or a promisee. The existence of the fiduciary relation modifies all agency agreements and creates rules which do not apply to contracts in which one party is not an agent for the other. The obligations of an agent are the same as those imposed on a trustee. . . . A tort action is not based upon the theory that the agent has failed to perform his promise, but upon the theory that the agent has improperly dealt with the affairs entrusted to him by the principal." (*Haurat* v. *Superior Court* (1966) 241 Cal.App.2d 330, 334 [50 Cal.Rptr. 520].)

■ Defendants contend they could not have converted the proceeds because plaintiffs were not entitled to exercise dominion and control over any specific funds. ■ " 'To establish a conversion, plaintiff must establish an actual interference with his *ownership* or *right of possession*. . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion.' [Citations.]" (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 136 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903], fn. omitted.) Because they were not obligated to segregate the proceeds, according to defendants, plaintiffs had no greater right to possession of the funds than North State or any of North State's creditors. We disagree.

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (*Weiss* v. *Marcus* (1975) 51 Cal.App.3d 590, 599 [124 Cal.Rptr. 297].) *Weiss* presents an analogous situation. A personal injury victim and his insurer hired a lawyer to provide legal services in return for the payment of a

contingency fee and granted the lawyer a lien on all amounts recovered. The lawyer was eventually discharged after providing services with a reasonable value of $6,750. The victim recovered a $35,000 settlement but refused to pay the lawyer. The Court of Appeal, in reversing a judgment for the victim after a demurrer was sustained without leave to amend, found the lawyer had stated a cause of action for conversion. (*Id.* at p. 599.)

Similarly, in *McCafferty* v. *Gilbank* (1967) 249 Cal.App.2d 569 [57 Cal.Rptr. 695], a lawyer was sued for conversion. The lawyer received two drafts as a settlement of a personal injury lawsuit. The victim had agreed to pay his ex-wife one-half of the proceeds from the settlement. The lawyer was privy to these negotiations, and yet, he personally cashed the drafts. The ex-wife brought an action against the lawyer for conversion. The lawyer moved for a nonsuit claiming that as a matter of law the ex-wife did not have a property interest in the settlement proceeds and he had no control over any funds to which she was legally entitled. (*Id.* at p. 571.)

The Court of Appeal again reversed, finding "that any act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." (249 Cal.App.2d at p. 576.) The court acknowledged the defendant lawyer had complete control over the money and the knowledge it belonged to the plaintiff. Hence, he had a positive duty to hold the money for her. (Accord, *Kaiser Foundation Health Plan, Inc.* v. *Aguiluz* (1996) 47 Cal.App.4th 302, 307 [54 Cal.Rptr.2d 665]; *Miller* v. *Rau* (1963) 216 Cal.App.2d 68, 76 [30 Cal.Rptr. 612].) " ' "[W]here a third party has paramount title to the money in the hands of the agent, and notifies the latter of his claim, if the agent nevertheless pays the principal, he is liable to the true owner." ' [Citations.]" (*McCafferty* v. *Gilbank, supra,* 249 Cal.App.2d at p. 577.)

*Weiss* and *McCafferty* were cases involving the sufficiency of the pleadings to state causes of action for conversion. Both cases reaffirmed the sound legal principle that an agent, with knowledge of another's right to receive a specific amount of money, can be liable for conversion when he applies it for his own use. Both courts rejected defendants' contention there was no liability for conversion as a matter of law because there was no duty to segregate specific funds.

Here, plaintiffs' case was even stronger. Defendants do not dispute they were plaintiffs' agent nor do they dispute they received the proceeds from the sale of plaintiffs' consigned farm products and commingled the funds with their general corporate account. Since, as a matter of law, defendants had the obligation to turn over the definite sum it received as

plaintiffs' agent, there was more than ample evidence to support the trial court's finding of conversion. That finding is not predicated on the state statutory scheme, as suggested by defendants, but on fundamental principles of conversion and agency. As an agent, defendants had the obligation to turn over the definite sum received by it on plaintiffs' account.

## II

Defendants insist that federal and state law preclude a common law action for conversion. Defendants fail, however, to articulate a legal theory for such preclusion. Are they suggesting a theory of preemption or exclusivity of remedy? They cite to no authority, and we have found none, to support the proposition that either Congress or the state Legislature intended to obliterate a farmer's cause of action for conversion under the common law by enacting laws explicitly designed to protect farmers and expand their statutory remedies.

In 1930 Congress enacted the Perishable Agricultural Commodities Act (PACA). (7 U.S.C. § 499a et seq.) The primary purpose of the law is to provide a practical remedy for small farmers and growers who are vulnerable to the unscrupulous business practices of brokers in perishable commodities. (*Chidsey* v. *Guerin* (6th Cir. 1971) 443 F.2d 584.) The act provides for the creation of a trust on sales proceeds for the benefit of unpaid sellers (7 U.S.C. § 499e(c)) provided the seller has given written notice as provided in the act. (7 U.S.C. § 499e(c)(3).) Plaintiffs conceded at trial they had not perfected their rights to establish a PACA trust; rather, their complaint was predicated on a common law action for conversion. They did not seek recovery under the federal law nor did they seek to impose a PACA trust as a remedy.

Nevertheless, defendants assert PACA would have been superfluous if sellers were able to establish a prima facie showing of conversion. In the absence of any indicia of legislative intent to abrogate a farmer's other remedies or any case law suggesting the federal scheme provides an exclusive remedy, we are unwilling to conclude PACA usurps a common law action thereby limiting the remedies of those the law was designed to protect and assist.

Nor do we find any evidence the Legislature unwittingly curtailed a farmer's cause of action for conversion by enacting a regulatory scheme for dealers of agricultural products which includes the imposition of criminal sanctions. (Food & Agr. Code, §§ 56181 to 56196, 56621 to 56632.2.) We acknowledge section 56623 specifically proscribes defendants' actions: "It is

a violation of this chapter if any commission merchant who collects or receives funds in connection with the sale of consigned farm products has made any use or disposition of these funds in his or her possession or control that endangers or impairs faithful and prompt payment to the consignor of the product or to any other person having a financial interest therein."

Our previous observations regarding the exclusivity of federal remedies apply with equal force to state statutory remedies. There is nothing in the state statutory scheme to preclude plaintiffs from pursuing a claim for conversion at common law rather than a statutory remedy. To say that defendants are also guilty of a crime punishable according to the terms outlined in Food and Agricultural Code sections 56631 and 56634, is not to say farmers, whose interests were sought to be protected, are to be denied their right to a civil recovery. Defendants' reliance on *People* v. *Rohe* (1952) 114 Cal.App.2d 605 [250 P.2d 647] is misplaced as this case deals with the constitutionality of a prison sentence and not the viability of a civil action for conversion.

The judgment is affirmed.

Puglia, P. J., and Davis, J., concurred.